FLORA TRUDY MOORE (WIDOW), CARRIE MOORE AND HUSBAND ELIJAH
MOORE, VANDER MARSHBURN (WIDOW), MANILLA CROMARTIE
AND HUSBAND WILL CROMARTIE, BLANCHIE LARKINS AND HUS-
BAND ALLIE LARKINS, VIOLET KEA AND HUSBAND ED KEA, HATTIE
ANDREWS (WIDOW), LLOYD LEWIS AND WIFE MRS. LLOYD LEWIS
v. DANIEL LEWIS AND WIFE LILLIE LEWIS, WILLIE PRIDGEN, HUS-
BAND OF ADDIE PRIDGEN, DECEASED; MARIE CROMARTIE AND
HUSBAND GEORGE CROMARTIE, MADGE WILLIAMS (SINGLE),
ETHEL DEVANE AND HUSBAND WILLIE DEVANE, GEO. PRIDGEN
AND WIFE ARTHELIA PRIDGEN, WILLIE PRIDGEN AND WIFE MRS.
WILLIE PRIDGEN, DAN PRIDGEN AND WIFE MRS. DAN PRIDGEN,
FREDIE PRIDGEN AND WIFE MRS. FREDIE PRIDGEN, NICHOLAS
PRIDGEN AND WIFE MRS. NICHOLAS PRIDGEN, ADDIE P. PRIDGEN
AND HUSBAND ........................ PRIDGEN, JOE PRIDGEN AND WIFE MRS.
JOE PRIDGEN.

(Filed 8 April, 1959.)

**1. Insane Persons §§ 2, 10—**

The court is under duty to appoint a guardian *ad litem* for a defendant
who is *non compos mentis* and who has no general guardian, and an
inquisition to determine the sanity of the defendant is not a condition
precedent to such appointment. G.S. 1-65.1.

**2. Same—**

The court may appoint a guardian *ad litem* for a defendant who is
*non compos mentis* upon application of any disinterested person, or the
court may do so upon its own motion.

**3. Same—**

Since the court has power to appoint a guardian *ad litem* for a person
who is *non compos mentis*, the court also has power to remove such
guardian, and when timely objection is made by the alleged incompetent,
the court should afford him ample and adequate opportunity to be heard
with respect to the need for a guardian *ad litem* and the fitness of the
appointee.

**4. Insane Persons § 10— Mere failue to revoke appointment of guardian
ad litem is not sufficient ground to avoid judgment in absence of
showing of prejudice.**

In this proceeding a default judgment of sale for partition was en-
tered, and one of the defendants was enjoined from further cutting tim-
ber from the *locus*. After this defendant was jailed for contempt for
violating the order, a guardian *ad litem* was appointed upon affidavit of
a disinterested person, and the default judgment was vacated and the
defendant was permitted to answer. Thereafter this defendant appeared
and defended in his own name. *Held:* The mere failure of the court
*ex mero motu* to enter an order vacating the appointment of the guardian
*ad litem* could not have prejudiced the rights of the defendant, and there
being no contention that the guardian failed to take any appropriate
action or that the appointment prevented the defendant from asserting
any right, or that the guardian was incompetent or interested in the

litigation, the defendant's contention that all proceedings after the appointment of the guardian were void, is untenable.

**5. Judgments § 27b:    Partition § 4c—**

Where, in partition proceedings, the fact of cotenancy is established and the owners of the land are before the court, the court has the power to order sale for partition.

**6. Appeal and Error § 4—**

A party who asserts no authority to speak for others, whose rights are antagonistic to his own, is not a party aggrieved by adjudication that such others have no interest in the subject of the litigation.

MOORE, J., took no part in the consideration or decision of this case.

APPEAL by Daniel Lewis as movant from *Moore (C.L.), J.,* in Chambers at BURGAW on 19 September 1958.

A proceeding for partition, as here entitled, was instituted in 1953. In 1954 a default judgment was entered and sale for partition ordered. The property was offered for sale several times and resales ordered because of increased bids. A sale was made 1 March 1955 at which time a bid of $9,600 was offered. This sale was confirmed and the commissioner was directed to convey upon payment of the purchase money. Following this order the assignee of the successful bidder moved for a survey to determine the boundaries separating the land owned by Daniel Lewis individually from the land sold. The motion also asserted that Daniel Lewis had cut valuable timber from the property sold and should be required to account for the timber cut and enjoined from further cutting. In May 1955 Lewis was cited for contempt for violation of an order enjoining him from cutting timber. He was found in contempt and imprisoned. An affidavit was thereupon filed by a disinterested person stating that Daniel Lewis was old, infirm, and unable to properly conduct his defense. A guardian *ad litem* was appointed.

Daniel Lewis thereupon employed counsel. They filed a motion asserting no proper process had ever been served on Daniel Lewis, and for that reason the orders theretofore entered were void. This motion was overruled and the questioned service adjudged valid. On appeal, Judge Williams, in September 1955, affirmed the adjudication as to service, but permitted Lewis to answer. Pursuant to the permission given, an answer verified by Lewis was filed. It denied the asserted cotenancy and asserted the lands were owned solely by Daniel Lewis and the heirs of Willie Lewis. Process was served on the heirs of Willie Lewis by publication. A guardian *ad litem* was appointed to represent them.

MOORE *v.* LEWIS.

On 28 July 1956 a consent order was entered which recites that Daniel Lewis had withdrawn his objection to confirmation of the $9,600 bid. The controversy as to ownership was, by the order, transferred to the fund and the cause placed on the civil issue docket. A reference was ordered. The referee conducted hearings, made his report including findings of fact and conclusions of law. Daniel Lewis testified at these hearings. The report was filed 19 January 1958. At the April 1958 Term Judge Frizzelle modified the findings and as modified confirmed the report and rendered judgment decisive of the rights of the parties. No exceptions were taken to that judgment. The clerk thereupon distributed the purchase monies paid to him in July 1956. His report showing distribution was confirmed 12 May 1958.

In June 1958 Daniel Lewis, acting through his present counsel, filed two motions to set aside the orders for the sale and confirmation. Answers were filed by all interested parties. Judge Moore heard the motions, made findings of fact, and denied the motions. Daniel Lewis excepted and appealed.

*Taylor & Mitchell for defendant, appellant.*
*Clark, Clark & Grady for appellees Turnell and Morgan.*
*Corbett & Fisler and Isaac C. Wright, amici curiae.*

RODMAN, J.   The motions to set aside the orders of sale and confirmation are based on these assertions: (1) Daniel Lewis was at all times competent to manage his affairs; hence the order appointing a guardian to act for him was invalid, rendering all subsequent proceedings void. (2) The heirs of Willie Lewis had not been properly served with process and, as they were necessary parties, the court was without power to direct a sale.

These motions were not verified by Daniel Lewis, but by one of his present attorneys. Daniel Lewis made an affidavit which recites the employment of present counsel with plenary power to act for him, confirming in advance any action they might take in his behalf. The affidavit contained this statement: "(T)hat since the entry of the purported judgment in this cause by Honorable J. Paul Frizzelle at the April Term, 1958, affiant has been represented in the instant cause solely by Messrs. Taylor and Mitchell and has not authorized any other attorney or attorneys to represent him; that any acts or representations of any attorney or attorneys subsequent to the entry of the above mentioned purported judgment, other than by Messrs. Taylor and Mitchell, have not been authorized by affiant, and are not the acts or representations of affiant or on behalf of affiant." The only

action taken subsequent to the judgment of April 1958 was the distribution of the purchase money in conformity with the provision of that judgment.

By statute, G.S. 1-65.1, the court is under a duty to appoint a guardian *ad litem* for infants, idiots, lunatics, or *non compos* defendants who have no general guardian.

An inquisition to determine the sanity of the defendant is not a condition precedent to the appointment. *In re Dunn,* 239 N.C. 378, 79 S.E. 2d 921. It may be made upon application of any disinterested person or by the court on its own motion. 44 C.J.S. 307, 308. "This is necessary, because of his presumed lack of discretion and want of capacity to understand and manage his own affairs." *Tate v. Mott,* 96 N.C. 19.

As said in *Morris v. Russell,* 26 A.L.R. 2d 947: "The rule requiring guardians for incompetents is for their protection. Its purpose is not to burden nor hinder them in enforcing their rights; nor to confer any privilege or advantage on persons who claim adversely to them or who may be trying to take advantage of them."

As the court has the power to appoint, it has the power to remove. *Tate v. Mott, supra; Abbott v. Hancock,* 123 N.C. 99; and when timely objection is made by the alleged incompetent, the court should afford him ample and adequate opportunity to be heard with respect to the need for a guardian *ad litem* and the fitness of the appointee. *Graham v. Graham,* 240 P 2d 564.

Here the appointment was made after movant had been sentenced to jail for contempt of court. The application for the appointment was not made by a party to the litigation but by a minister who swore movant was, on account of age, incompetent and "utterly innocent of court proceedings." Movant also filed an affidavit stating "I am an old colored man, utterly ignorant of Courts and Court proceedings."

The appointment was made in July 1955. The motion to vacate the appointment was made in June 1958.

It is not suggested that the appointee was incompetent or interested in the litigation.

By the intervention of the guardian *ad litem* a default judgment was vacated and movant was permitted to answer. Judge Moore found: "From this point (order permitting the filing of answer) Daniel Lewis defended the action in his own name, and the guardian *ad litem* took no further part in the proceedings."

In view of this finding, supported as it is by the evidence, the mere failure of the court *ex mero motu* to enter an order vacating the ap-

pointment cannot be held to have prejudiced the rights of movant. Such a holding would substitute formality for practicality.

If movant were here complaining of a loss of rights resulting from the abdication and inaction of the guardian, the finding would justify remedial action for the protection of his ward. But movant does not complain of inaction. He merely asserts the appointment was not authorized. He nowhere indicates how the appointment prevented him from asserting his rights. It follows that the court correctly denied the motion based on the assertion that the appointment of the guardian *ad litem* made all subsequent proceedings void or irregular. *Lovett v. Stone*, 239 N.C. 206, 79 S.E. 2d 479.

The findings of the referee, confirmed on appeal, established a cotenancy. The owners were before the court. This gave the court power to order the sale.

The findings of the referee, confirmed on appeal, negative the assertion now made by movant that Willie Lewis or his children have an interest in the property. This finding is beneficial to movant. It enlarges his share in the property. If, as movant now asserts, there are outstanding rights, they must speak for themselves. Movant does not assert any authority to speak for them. That their rights might be affected does not make him a party aggrieved. *In re Application for Reassignment*, 247 N.C. 413, 101 S.E. 2d 359; *Gregg v. Williamson*, 246 N.C. 356, 98 S.E. 2d 481; *Templeton v. Kelley*, 216 N.C. 487, 5 S.E. 2d 555; *Casualty Co. v. Green*, 200 N.C. 535, 157 S.E. 797.

Affirmed.

Moore, J., took no part in the consideration or decision of this case.